**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KILLER HUMBERTO LOPEZ GAXIOLA,

    Plaintiff,

v.   No.  08-CV-827 WJ/KBM

KENNETH HART, REUBEN RIVERA, AND
RICHARD LIDBERG,

    Defendants.

### MEMORANDUM ORDER AND OPINION GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

THIS MATTER comes before the Court on Defendants' Amended Motion for Summary Judgment Based on Qualified Immunity (Doc. 28).  The Defendants, who are on the Board of Stewards[1] for the Zia Park Racetrack, scratched the Plaintiff's racehorse from the Zia Park Trials, thereby preventing the horse from racing.  The Plaintiff sued, claiming that Defendants violated his Fourteenth Amendment right to due process by scratching his racehorse.  Because the Plaintiff has not alleged any facts showing a deprivation of his Due Process rights, this Court GRANTS the Defendants' Motion for Summary Judgment Based on Qualified Immunity.

### BACKGROUND

Plaintiff Gaxiola is the sole owner of a racehorse named "A Streak Regard."  Both Plaintiff and the horse's trainer, Juan Gonzalez, are licensed by the New Mexico Racing Commission.  Plaintiff entered his horse to race in the October 27, 1997 Zia Park Trials—a

---

[1] The Defendant Stewards are state officials employed by the New Mexico Racing Commission.

qualifying race for the New Mexico Classic Futurity race.  The day before the Trials, the "clocker" informed Trainer Gonzales that the horse would be scratched from the Trials because the horse did not perform the required pre-race "workout."  New Mexico regulations require that each racehorse must perform at least one workout 60 days prior to entry in a race.  N.M. ADMIN. CODE § 15.2.5.11 (A) ("Any horse which has started, but not within sixty (60) days must have at least (1) one workout within sixty days prior to entry.").  Gonzales informed the racing officials that the horse had run two previous workouts within the 60-day window and gave the officials exact dates and the names of the jockeys for each workout.

On the morning of the Trials, the clocker advised Gonzales that his horse would be scratched because one of the workouts had been too slow.  When Gonzales asked the Board of Stewards why they had decided to scratch the horse, they reaffirmed that the horse had a poor workout time.  Trainer Gonzales, Assistant Trainer Elesio Gonzales (who was also the trainer's brother), and the jockey who rode the horse during the trial told the Stewards that the horse had performed proper and timely workouts.  Wayne Epstein, the clocker for the Zia Park Trials who had also witnessed the workout, testified that the workout was performed improperly.  The Stewards decided to scratch the horse.

After the Trials, the Stewards held a formal hearing on the horse's eligibility and whether Gonzales had violated New Mexico regulations by entering an ineligible horse.  The Assistant Trainer represented Gonzales at the hearing.  During the hearing, Gonzales heard evidence that one of the horse's workout was improperly performed.[2]  The Stewards found Gonzales in

---

[2] The Defendant Stewards assert that Gonzales agreed that the horse's workout had been improperly performed.  The Plaintiff disputes this fact, asserting that he believed the workout had been properly performed and never stated otherwise.  Because the Defendants have filed this Motion for Summary Judgment, the Court must view all facts in the light most favorable to the

violation of § 15.2.5 of the New Mexico Administrative Code and fined him $100. Plaintiff chose not to appeal the ruling.

Plaintiff Gaxiola, the owner of the racehorse, filed suit under 42 U.S.C. §1983 against the three Defendant Stewards claiming that they violated his Fourteenth Amendment right to due process. He asserts that his horse was favored to win the Zia Park Trials as well as the New Mexico Classic Futurity and claims that the unconstitutional actions of Defendants preventing him from winning a substantial amount of purse money as well as increasing the value and prestige of his horse. The Defendants subsequently filed this Motion for Summary Judgment arguing that they are entitled to qualified immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

---

Plaintiff.

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendants qualified immunity. *Id.* Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

## DISCUSSION

### I. Substantive Due Process

In his complaint, Plaintiff claims that he "had a property interest in his horse . . . which could not be deprived without due process of law" and that the Defendants did not afford him adequate notice or opportunity to be heard. While the Plaintiff does not specify whether he is making a procedural or a substantive due process claim, the factual allegations in his complaint only support a procedural claim. Plaintiff's complaint is that he was not given adequate notice or an opportunity to be heard. But the substantive component of the Due Process Clause precludes certain deprivations of property *regardless* of the procedures taken or notice given. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Furthermore, a substantive due process claim arises only when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009) (quoting *Lewis*, 523 U.S. at 847 n.8) . As Defendants note, Plaintiff does not explicitly allege that Defendants' conduct was conscience-shocking nor does the Plaintiff allege any facts from which the Court could draw this inference. *See Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Defendants filed their Motion for Summary Judgment, arguing that Plaintiff could not win on his procedural Due Process claim. In his Response, Plaintiff for the first time asserts a substantive due process claim. As Defendants aptly point out, Plaintiff cannot insert a new claim in his response merely because he faces a meritorious summary judgment motion. *But see McGuinness v. University of New Mexico School of Medicine*, 170 F.3d 974, 976 (10th Cir. 1998) (noting that a court may treat new claims added in a response to a summary judgment motion as a motion to amend). Even if this Court were to overlook Plaintiff's backdoor tactics, Plaintiff *still* has not alleged any facts that give rise to a substantive due process violation. In his Response, Plaintiff argues only that Defendants' wrongful scratching of his horse violated the New Mexico Racing Commission's own regulations. He points to no authority suggesting that a violation of these regulations, assuming a violation occurred, amounts to a per se substantive due process violation. Relatedly, Plaintiff asserts that the Defendants selectively applied a requirement that the horse perform its workout within a specified amount of time. According to Plaintiff, such a requirement does not exist—either in the regulations or elsewhere—and the Defendants decision to impose such a requirement on Plaintiff was "completely arbitrary and capricious and without any justification . . . whatsoever." Regardless, however, this motion comes before the Court in the context of a qualified immunity defense. Even if this Court overlooked Plaintiff's failure to clearly allege his substantive due process claim and agreed that the Defendants' arbitrary imposition of a timing requirement was so egregious that it violated Plaintiff's substantive due process rights, this Court would still have to grant Defendants' motion

5

because such a right is not clearly established.  Plaintiff has not cited to any case—within the Tenth Circuit or otherwise—holding that the imposition of an arbitrary timing requirement in horse-racing workouts violates substantive due process.  Furthermore, given the Supreme Court's reluctance to expand the protections of substantive due process, *see Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992), this Court declines Plaintiff's invitation to apply the protections of substantive due process in this context.

## II. Procedural Due Process

Plaintiff claims that Defendants violated his procedural Due Process rights by scratching his horse without adequate notice or an opportunity to be heard.  Courts engage in a two-step inquiry when evaluating procedural due process claims.  *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999)).  First, courts determine whether the plaintiff possesses a constitutionally protected property interest.  *Id.*  If so, the court must next determine whether the plaintiff was afforded the appropriate level of process.  *Id.*  Here, the Defendants do not dispute that Plaintiff has a constitutionally protected property interest in his racehorse and in any proceeds which may have flowed from winning the races in which the horse was entered.  The real question in this case is whether Defendants afforded Plaintiff an appropriate level of process.

Ordinarily, an individual is entitled to some type of hearing *before* the government deprives him of his property interest.  *Id.* at 1220.  In some cases, however, such as matters of public health and safety when the state must act quickly, a post-deprivation hearing is constitutionally adequate.  *Id.* (citing *Clark*, 168 F.3d at 1189).  The Supreme Court has held that the type of hearing required depends on: (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation through the existing procedures, and the probable value of additional or

substitute procedures; and (3) the government's interest.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  With respect to horse racing, the Supreme Court has already held that states have "an important interest in assuring the integrity of the racing carried on under its auspices."  *Barry v. Barchi*, 443 U.S. 55, 64 (1979).  In any case, the Court need not decide whether Plaintiff was entitled to a pre- or post-deprivation hearing here because Defendants gave Plaintiff a meaningful hearing both before and after they scratched his horse.

First, the Stewards informed Plaintiff on the morning of the race that his horse would be scratched.  The horse's trainer, assistant trainer, and jockey all had an opportunity to speak to the Stewards before the race and voice their objections.  The Stewards also heard from the race clocker who stated that the workout was performed improperly.  Certainly, this informal hearing did not resemble a trial—nor did it need to in order to satisfy the demands of due process.  *Camuglia*, 448 F.3d at 1220 (noting that the hearing need not provide all, or even most, of the protections afforded by a trial).  The Stewards had to make a quick decision about the horse's eligibility and they did so only after hearing from all the interested parties.  *Mathews*, 424 U.S. at 334 ("[D]ue process is flexible and calls [only] for such procedural protections as the particular situation demands.").  Plaintiff complains that this did not constitute a meaningful hearing because it occurred the morning of the race making it impossible for the Plaintiff to cure any eligibility problems.  The Gaming Commission Regulations, however, specifically permit horses to be scratched "for any reason at any time up until 45 minutes prior to post time for the race."  N.M. Admin. Code § 15.2.5.9(B)(3).

Even if the pre-deprivation hearing was less than ideal, the Stewards held a formal hearing on the horse's eligibility after the race.  Assistant Trainer Gonzales represented Trainer Gonzales at the hearing and had a second opportunity to present evidence supporting his

7

position. Again, the trainers heard the evidence from clocker Wayne Epstein that the workouts had been improperly performed. After hearing from both sides, the Stewards found Trainer Gonzales in violation of § 15.2.5 of the New Mexico Administrative Code and fined him $100. Plaintiff (through his agent Trainer Gonzales) had notice of the hearing, was represented by counsel, had the opportunity to present testimony and evidence on his behalf, and was able to hear the evidence against him. Furthermore, Plaintiff chose not to appeal the Stewards' decision. Notably, Plaintiff does not suggest that this second hearing was inadequate; in fact, he fails to even mention the post-deprivation hearing in his Response. Even if the pre-deprivation hearing was deficient, any deficiencies were remedied by the post-deprivation hearing during which Plaintiff was given ample opportunity to establish any error in the Stewards' earlier decision.

In conclusion, the undisputed facts show that Plaintiff was afforded all the process to which he was due. Unfortunately for Plaintiff, the Due Process Clause "is not a guarantee against incorrect or ill-advised [government] decisions." *Collins*, 503 U.S. at 129. The Stewards gave Plaintiff both a pre- and post-deprivation hearing and Plaintiff has not shown that either hearing was constitutionally inadequate. Therefore, the Defendants are entitled to summary judgment on Plaintiff's Due Process claims.

## CONCLUSION

For the reasons described above, the Court hereby GRANTS the Defendants' Motion for Summary Judgment Based on Qualified Immunity.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE